FILED

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR COLLIER COUNTY, FLORIDA

CIVIL ACTION

COLLIER COUNTY SHERIFF'S OFFICE,

    Plaintiff,

v.

Case No. 12-CA-1630

NEW WORLD SYSTEMS CORPORATION, a Michigan corporation,

2:12-cv-533-FtM-29SPC

    Defendant.

_____/

## COMPLAINT

Plaintiff, COLLIER COUNTY SHERIFF'S OFFICE, files this its Complaint against Defendant, NEW WORLD SYSTEMS CORPORATION, and states as follows:

### PARTIES

1. COLLIER COUNTY SHERIFF'S OFFICE ("CCSO"), is, and at all times pertinent to this proceeding has been, a government entity with its principal offices in Collier County, Florida.

2. NEW WORLD SYSTEMS CORPORATION ("NWS") is a Michigan corporation which is registered to do business, and is engaged in regular business activity, in the State of Florida.[1]

### JURISDICTION AND VENUE

3. This is an action for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing, with money damages in excess of $15,000, exclusive of interest, attorneys' fees and costs. Jurisdiction is vested in the Twentieth Judicial Circuit Court of Collier County pursuant to Article V, § 5(b) of the Florida Constitution.

---

[1] Hereinafter, CCSO and NWS are collectively referred to as the "parties."

4562499.4

HAHN LOESER & PARKS LLP
800 Laurel Oak Drive, Suite 600   Naples, Florida   34108   phone 239.254.2900

4. Venue is proper in Collier County, Florida as the place where the contract was entered into, services were rendered, and the breach occurred.

## GENERAL ALLEGATIONS

### The Bid Process

5. Prior to May 2008, CCSO was attempting to identify a vendor to install a new records management, jail management and computer aided dispatch system (the "System").

6. On May 8, 2008, CCSO issued a request for proposal ("RFP") for the installation, integration, and implementation of the System.

7. The RFP sent by CCSO contained over 2,500 lines of specifications that were required for CCSO's System.

8. CCSO received written bids from four companies, including a bid from NWS.

9. NWS submitted the lowest bid. NWS also offered discounts for its services in exchange for an agreement by CCSO to be a demonstration center for NWS to use with future clients.

10. CCSO and NWS agreed to a list of custom modifications to NWS's standard software package ("Standard Software") in order to meet the requirements of the System.

### The Contract

11. After reviewing NWS's bid, and after negotiations regarding the custom modifications needed to meet the requirements of the System, CCSO awarded the contract to NWS.

12. CCSO and NWS entered into the General Engagement Agreement, which was effective on April 28, 2009 (a copy is attached hereto as **Exhibit 1**).

13. The General Engagement Agreement states that "this Agreement will commence on April 28, 2009 and end on April 28, 2012." Ex. 1, at ¶ 4.

14. In addition to the General Engagement Agreement, the parties entered into the following series of agreements, amendments, and addendums which memorialized the details related to the installation, integration, and implementation of the System:

   a. The First Amendment to General Engagement Agreement (dated April 28, 2009) (a copy is attached hereto as **Exhibit 2**). This amendment changed the maximum sum to be paid by CCSO (Ex. 2, at ¶ 1(b)), but did not alter the April 28, 2012 deadline.

   b. The Standard Software License and Services Agreement (dated April 28, 2009) (a copy is attached hereto as **Exhibit 3**). This agreement memorialized CCSO's RFP specifications and NWS's successful response to the RFP, but did not alter the April 28, 2012 deadline. Moreover, this agreement also required NWS to acquire and maintain a performance bond "for the faithful performance of [NWS] hereunder, and to indemnify CCSO against loss." Ex. 3, at ¶ 18.6. This agreement further mandated that "the Performance Bond will continue in effect for one (1) year following system acceptance as a guarantee that the workmanship and materials are free from defects." *Id.*

   c. The First Amendment to Standard Software License and Services Agreement (dated April 28, 2009) (a copy is attached hereto as **Exhibit 4**). This amendment memorialized the modifications to NWS's Standard Software needed to meet the requirements of the CCSO System, but did not alter the April 28, 2012 deadline.

   d. The Second Amendment to Standard Software License and Services Agreement (dated April 28, 2009) (a copy is attached hereto as **Exhibit 5**). This amendment set forth a two-phase schedule for NWS to complete the System, and did not alter the April 28, 2012 deadline.

e. The Contract Addendum (dated August 19, 2009) (a copy is attached hereto as **Exhibit 6**), which addresses "the procurement of Third Party Computer Hardware, Proprietary Software products and services by [NWS]" for CCSO. Ex. 6, at p. 1. This addendum did not alter the April 28, 2012 deadline.

f. A Notice to Proceed (dated September 8, 2009) (a copy is attached hereto as **Exhibit 7**), which memorialized NWS's authority to commence work on certain aspects of the installation, integration, and implementation of the System that were originally contemplated to be part of the second phase of the project. Ex. 7, at ¶ 1. This notice did not alter the April 28, 2012 deadline.

g. The Second Contract Addendum (dated September 11, 2009) (a copy is attached hereto as **Exhibit 8**), which addresses the licensing of additional third party software. Ex. 8, at p. 1. This addendum did not alter the April 28, 2012 deadline.[2]

15. The Contract requires the installation, integration, and implementation of the System, and established a final project deadline of April 28, 2012 for delivery of the fully operational System.

16. Furthermore, pursuant to the Contract, CCSO's payment schedule was designed so that portions of the overall cost became due to NWS upon the completion of specific steps by NWS. *See* Ex. 5, at pp. 4-13.

17. On or about July 8, 2009, pursuant the Contract (*see* Ex. 3, at ¶ 18.6), NWS obtained a performance bond ("Performance Bond," of which a copy is attached hereto as **Exhibit 9**). By its own terms, the Performance Bond expired on July 8, 2010. Ex. 9, at ¶ 1.

---

[2] Hereinafter, the parties' aforementioned agreements, amendments, addendums, and notices, which have been attached to this Complaint as Exhibits 1 through 8, are collectively referred to as the "Contract."

### NWS's Failure to Perform Under the Contract

18.  In June 2009, NWS began performance pursuant to the Contract.

19.  By the Fall of 2011, CCSO became concerned that NWS was not prepared or equipped to complete the System - pursuant to the Contract's specifications – prior to the April 28, 2012 deadline. CCSO communicated its concerns to Nino DiCosmo, NWS Vice President, in an email dated December 15, 2011.

20.  On January 26, 2012, at a meeting between the parties, NWS proposed three options for completing the System. *See* NWS's January 26, 2012 Proposal (a copy is attached hereto as Exhibit 10). None of the options that were presented entailed the completion of the System by the April 28, 2012 deadline. *See id.* CCSO did not accept any of the options presented by NWS, nor did CCSO agree to extend the Contract beyond April 28, 2012.

21.  NWS did not perform as required by the April 28, 2012 deadline. The System currently remains unfinished and incomplete.

22.  Pursuant to the Contract's payment schedule, CCSO has paid NWS approximately $1,964,692.19, an amount which can be further broken down as follows:

   a.  $985,058.00 for progress payments;

   b.  $565,244.00 for maintenance fees, which were paid by CCSO in good faith despite the fact that there has never been a System to maintain;

   c.  $286,186.00 for third party services;

   d.  $98,564.19 for travel expenses; and

   e.  $29,640.00 for other costs such as the Performance Bond and escrow.

23.  Regarding the aforementioned $286,186.00 that CCSO paid for third party services, approximately $182,000.00 was for computer hardware and integrated software that CCSO has received – or will receive – the full value and benefit of, and which cannot be

returned by CCSO. Accordingly, CCSO does not seek the return or reimbursement of this $182,000.00, and CCSO does not include this amount in any damage calculations.

24. CCSO has retained the law firm of Hahn Loeser & Parks LLP, and has agreed to pay said firm a reasonable fee for its services.

25. CCSO has performed all conditions precedent to the filing of this Complaint or such conditions precedent have been satisfied or waived.

## COUNT ONE – BREACH OF CONTRACT

26. CCSO incorporates by reference the allegations contained in Paragraphs 1 through 25 of its Complaint as if fully set forth herein.

27. This Count seeks money damages in excess of $15,000, exclusive of interest, costs and attorneys' fees.

28. The Contract between CCSO and NWS constitutes a valid and binding contract.

29. The Contract required NWS to complete the installation, integration, and implementation of the System by April 28, 2012.

30. The Contract further required NWS to maintain a performance bond until one year after the System was accepted by CCSO.

31. NWS has breached the Contract by, among other things:

   a. Failing to complete the installation, integration, and implementation of the System by April 28, 2012; and

   b. Failing to maintain a performance bond from July 8, 2010 through the present.

32. CCSO has suffered damages as a result of NWS's breaches of the Contract.

WHEREFORE, CCSO demands judgment against NWS for money damages in excess of $15,000, along with prejudgment interest, attorneys' fees, costs of suit, and for such other and further relief as this Court deems just and proper.

## COUNT TWO – UNJUST ENRICHMENT

33. This is an alternative cause of action for unjust enrichment with damages in excess of $15,000.00, exclusive of interest, attorneys' fees, and costs.

34. CCSO re-alleges and asserts the allegations in Paragraphs 1 through 25 of its Complaint as if fully asserted herein.

35. CCSO conferred a benefit on NWS by paying NWS approximately $1,964,692.19. in good faith in exchange for NWS's timely installation, integration, and implementation of the System.

36. NWS voluntarily accepted, retained, and appreciated this benefit, which was conferred upon it.

37. As set forth in Paragraph 23 herein, CCSO paid $182,000.00 for computer hardware and integrated software that CCSO has received – or will receive – the full value and benefit of, and which cannot be returned by CCSO.

38. The circumstances set forth herein render NWS's retention of this benefit inequitable, and equity demands that NWS return $1,782,692.13 of the $1,964,692.19 paid by CCSO.

WHEREFORE, CCSO demands judgment against NWS, for damages, prejudgment interest, and for such other and further relief as this Court deems just and proper.

## COUNT THREE – VIOLATION OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

39. This Count seeks money damages in excess of $15,000, exclusive of interest, costs and attorneys' fees.

40. CCSO incorporates by reference the allegations contained in Paragraphs 1 through 25 of its Complaint as if fully set forth herein.

41. By its conduct described above, including but not limited to its failure to complete the installation, integration, and implementation of the System within the time period set forth within the Contract, NWS has materially breached the Contract and violated the covenant of good faith and fair dealing that is implied in every contract.

42. CCSO has suffered damages as a result of NWS's breach of its implied duty of good faith and fair dealing.

WHEREFORE, CCSO demands judgment against NWS for damages, prejudgment interest, attorneys' fees, and for such other and further relief as this Court deems just and proper.

HAHN LOESER & PARKS LLP

By: *[signature: Michael Shue]*
THEODORE L. TRIPP, JR.
Florida Bar No. 221856
MICHAEL C. SHUE
Florida Bar No. 029550
2532 East First Street
Fort Myers, FL 33901
Phone: (239) 337-6700
Fax:    (239) 337-6701

*Counsel for Plaintiff Collier County Sheriff's Office*